**KOLLER LAW LLC**
David M. Koller, Esq. (90119)
Jordan D. Santo, Esq. (320573)                                              *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PETER ISAAC, | : | Civil Action No. |
| 165 McCann Drive | : | |
| State College, PA 16801 | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | **Complaint and Jury Demand** |
| | : | |
| PHILIPS HEALTHCARE | : | |
| INFORMATICS, | : | |
| 1 Echo Drive | : | |
| Reedsville, PA 17084 | : | |
| | : | |
| 3000 Minuteman Road | : | |
| Andover, MA 01810 | : | |
|     Defendant. | : | |

**CIVIL ACTION**

Plaintiff, Peter Isaac (hereinafter "Plaintiff"), by and through his attorney, Koller Law, LLC, bring this civil matter against Philips Healthcare Informatics (hereinafter "Defendant"), for violations of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), the Americans with Disabilities Act of 1990, as amended ("ADA"), the Pennsylvania Human Relations Act ("PHRA") and the Family and Medical Leave Act of 1993, as amended ("FMLA"). In support thereof, Plaintiff avers as follows:

## **THE PARTIES**

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual residing at the above captioned address.

3. Upon information and belief, Defendant Philips Healthcare Informatics is a healthcare company with a location at 1 Echo Drive, Reedsville, PA 17084 and with corporate headquarters located at 3000 Minuteman Road, Andover, MA 01810.

4. Defendant is an entity engaged in an industry or activity affecting commerce which employs 50 or more employees in all of its offices for each working day during each of 20 or more calendar workweeks in the current or preceding year relevant to the matter at issue.

5. At all times material hereto, Plaintiff was employed by Defendant for at least twelve hundred and fifty (1,250) hours of service during the twelve-month period prior to requiring leave.

6. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment.  In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

7. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer.  In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

8. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

9. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

10. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

11. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

12. Venue is properly laid in the Middle District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

13. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

14. Plaintiff exhausted his administrative remedies under Title VII, the ADA and the PHRA.

15. Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging race, color, national origin, disability discrimination and retaliation against Defendant.

16. The Charge was assigned a Charge Number 530-2025-00412 and was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

17. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") relative to the Charge and that Notice is dated July 17, 2025.

18. Prior to the filing of this action, Plaintiff notified the EEOC of his intent to proceed with a lawsuit in federal court.

19. Plaintiff files the instant Complaint within ninety (90) days of his receipt of his Right to Sue in this matter, as it relates to his federal law claims, and within two years of the issuance of the Right to Sue in this matter as it relates to his PHRA claims.

20. Plaintiff has exhausted his administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

## PLAINTIFF'S EMPLOYMENT HISTORY

21. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

22. Plaintiff's perceived race is Middle Eastern, he is Brown and his national origin is Egypt.

23. In or around July 2016, Defendant hired Plaintiff in the position of Reliability Engineer III, Health Tech.

24. Plaintiff was well qualified for his position and performed well.

25. In or around May 2020, Defendant promoted Plaintiff to the position of Manager – Life Cycle Engineering.

26. Plaintiff was well qualified for his position and performed well.

## DEFENDANT PROMOTED PLAINTIFF, BUT ASSIGNED HIM A DIFFERENT JOB TITLE THAN HIS NON-EGYPTIAN COWORKERS

27. In or around the summer of 2022, Defendant promoted Plaintiff.

28. Plaintiff's new title should have been "Senior Manager."

29. However, Defendant gave Plaintiff the position title "Group Leader" instead.

30. Plaintiff asked Reid Hannon (Caucasian, non-Egyptian), Plaintiff's then-Manager, about this.

31. Hannon stated that this was the standard title and he could not change it.

32. However, all of the other individuals working at the same tier-level on Hannon's team are "Senior Managers," not "Group Leaders."

33. In fact, another employee was promoted to the same job tier/position Plaintiff had all of the same job tier responsibilities as the other Senior Managers but Defendant singled out Plaintiff by giving him a different title.

34. Plaintiff was the only person under Hannon (and at the Reedsville location of Defendant) in this role that did not have the Senior Manager title.

## DEFENDANT ATTEMPTED TO HAVE A DEI ACTIVITY, BUT ENDED ALL DEI ACTIVITY AFTER NEGATIVE, DISCRIMINATORY COMMENTS

35. In or around June 2023, Defendant had a Diversity, Equity and Inclusion (DEI) activity in which everyone posted a comment on Defendant's walls.

36. Shortly after, it became evident that a lot of negative, discriminatory comments were being posted on the wall. Jeff Cohen, CEO, shut down the activity.

37. Defendant did not hold any similar DEI activities after this.

## PLAINTIFF COMPLAINED ABOUT RACE AND NATIONAL ORIGIN DISCRIMINATION, BUT DEFENDANT REFUSED TO ADDRESS HIS COMPLAINT

38. Shortly after this happened, Plaintiff, during his one-on-one meeting with Hannon, complained about race/national origin discrimination with Hannon.

39. Plaintiff complained that his Caucasian/non-Egyptian coworker, a Senior Project Manager, made a negative comment that inmates left prisons during the Black Lives Matter movement.

40. This coworker had always been particularly aggressive towards Plaintiff.

41. This coworker also commented to Plaintiff that Plaintiff was "trying too hard" and "it's difficult to be charming and brown."

42. Plaintiff also complained that he was left out of critical correspondences by the other Caucasian/non-Egyptian Senior Project Manager.

43. This interfered with Plaintiff's ability to do his job.

44. Hannon responded that this was Plaintiff's issue and that he needed to work it out on his own.

45. Hannon added that Plaintiff's complaint made him come across as pushy and aggressive, and that this was not good for him.

## HANNON REQUESTED THAT PLAINTIFF INTERVIEW HIS SON FOR A POSITION

46. In or around February 2024, Hannon asked Plaintiff to interview his son (Caucasian, non-Egyptian) for a position on Plaintiff's team.

47. Plaintiff interviewed Hannon's son, but ultimately decided to go with another candidate.

48. His son was hired immediately thereafter on a different team at Defendant

## HANNON HAD A NEGATIVE PERFORMANCE EVALUATION ISSUED TO PLAINTIFF

49. Less than a month later, in or around March 2024, Plaintiff received his first negative performance review in eight (8) years at Defendant.

50. Plaintiff now reported to Larry Liu (non-Egyptian), Manager, who then reported to Hannon.

51. Plaintiff asked Liu about his negative review.

52. Liu said he did not know why Plaintiiff's performance review was negative.

53. Liu stated that Plaintiff's performance review had been changed by Hannon who was above Liu in the chain of command

## PLAINTIFF WAS DIAGNOSED WITH DISABILITIES AND INFORMED DEFENDANT

54. Around this time, Plaintiff began to suffer from severe panic attacks as a result of Defendant's discrimination and harassment.

55. Following his negative performance review, Plaintiff began to suffer panic attacks multiple times per day.

56. Plaintiff began sleeping less than two (2) hours per night.

57. Plaintiff lost his judgment and focus, so he sought urgent psychiatric care.

58. Plaintiff was diagnosed with Major Depressive Disorder ("MDD") and Generalized Anxiety Disorder ("GAD") at this time.

59. MDD and GAD are serious health conditions that are considered to be disabilities under the Americans with Disabilities Act of 1990, as amended ("ADA") and the Pennsylvania Human Relations Act ("PHRA").

60. The major life activities affected by MDD and the GAD, include, but are not limited to, sleeping, eating, caring for one's self and working.

61. Plaintiff notified Liu of his disabilities.

## **PLAINTIFF TOOK APPROVED FMLA LEAVE TO TREAT HIS DISABILITIES**

62. By April 2024, Plaintiff's panic attacks had not improved.

63. Plaintiff informed Liu that he would be applying for Family and Medical Leave Act ("FMLA") leave and short-term disability ("STD").

64. Plaintiff was approved for a leave of absence through FMLA and STD from May 1, 2024 through August 1, 2024.

## **DEFENDANT NOTIFIED PLAINTIFF OF A COMPLIANCE INVESTIGATION UPON HIS RETURN TO WORK FROM HIS FMLA LEAVE**

65. On or about August 2, 2025, Plaintiff received a notification for a meeting invitation to be held on August 5, 2024.

66. The meeting stated it was for a "compliance investigation" or words to that effect.

## **DEFENDANT INFORMED PLAINTIFF OF THE INVESTIGATION INTO HIS PERSONAL PROJECT**

67. Plaintiff returned to work in person on or about August 5, 2024.

68. At 8:30 a.m., Plaintiff attended the compliance investigation meeting.

69. Beyond the subject-line, Plaintiff did not know the purpose of the meeting.

70. Mary Howell (non-Egyptian), Human Resources Manager, informed Plaintiff that he was being investigated for a personal project of his called "Defect Maestro."

71. Plaintiff started this project on his personal time.

72. Plaintiff asked what violations Defendant was investigating.

73. Howell refused to provide this information.

### **HOWELL REFUSED TO ALLOW PLAINTIFF TO TAKE HIS MEDICATION**

74. Plaintiff asked to have a five-minute break to take his anxiety medication during this meeting.

75. Howell nastily replied that Plaintiff could not go take his medication.

76. Howell said Plaintiff's doctor approved him to return to work, so Plaintiff was "fit to proceed" or words to that effect.

77. Plaintiff began to feel a panic attack occur during this meeting.

### **PLAINTIFF INSISTED ON TAKING A BREAK DUE TO HIS DISABILITIES**

78. Plaintiff insisted he needed a break.

79. Plaintiff left for approximately three (3) minutes to use his ventilator and take his medicine before returning to the meeting.

### **HOWELL ACCUSED PLAINTIFF OF BEING UNCOOPERATIVE AND PLACED HIM ON SUSPENSION**

80. Thereafter, Howell stated that Plaintiff was being uncooperative.

81. Howell stated that the meeting concluded and Plaintiff would be placed on a one (1) week suspension through August 9, 2024.

### **PLAINTIFF COMPLAINED OF DISABILITY DISCRIMINATION**

82. Immediately after the meeting, Plaintiff followed up with the Compliance Team, providing a statement about his personal project.

83. Plaintiff also stated that he intended to cooperate during the meeting but experienced severe symptoms of his disability due to the stress of the meeting.

84. That same day, Plaintiff sent a separate email to Howell, alleging disability discrimination prior to his leave and since his return from his medical leave of absence covered by FMLA leave.

85. Plaintiff remained on suspension.

## PLAINTIFF OFFERED TO SHUT DOWN HIS PERSONAL PROJECT IF DEFENDANT REQUIRED IT

86. On or about August 8, 2024, Plaintiff sent an email to Howell and the Compliance Team stating that his intention was to help or words to that effect.

87. Plaintiff stated that he could shut down his personal project website if necessary.

## DEFENDANT TERMINATED PLAINTIFF

88. On or about August 9, 2024, Hannon and Howell called Plaintiff into a meeting and Howell terminated Plaintiff effective immediately.

89. Howell alleged that his termination was for violating Defendant's ethics agreement by putting confidential information online.

90. Plaintiff stated that his personal project did not violate the ethics policy.

91. Nonetheless, Howell concluded the meeting and upheld Plaintiff's termination.

92. Defendant discriminated against Plaintiff due to his race, color, national origin and disabilities and retaliated against him for engaging in protected activity in violation of Title VII, the ADA and the PHRA.

93. Defendant also retaliated against Plaintiff for utilizing his rights under the FMLA in violation of the FMLA.

94. Defendant's acts and/or omissions were willful or performed with reckless disregard to Plaintiff's federal statutorily protected rights.

## COUNT I – RACE DISCRIMINATION
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

95. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

96. Plaintiff is a member of protected classes in that his perceived race is Middle Eastern.

97. Plaintiff was qualified to perform the job for which he was hired.

98. Plaintiff suffered adverse job actions, including, but not limited to termination.

99. Similarly situated people outside of Plaintiff's protected class were treated more favorably than Plaintiff.

100. Circumstances exist related to the above cited adverse employment actions that give rise to an inference of discrimination.

101. Defendant discriminated against Plaintiff on the basis of his protected class.

102. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

103. The reasons cited by Defendant for the above cited adverse employment actions that Plaintiff suffered are pretext for discrimination.

104. Defendant's conduct was willful or performed with reckless disregard to his federal statutory rights.

   **WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

### COUNT II – DISCRIMINATION BASED ON RACE
### PENNSYLVANIA HUMAN RELATIONS ACT

105. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

106. The foregoing conduct by Defendant constitutes unlawful discrimination against Plaintiff on the basis of his protected class (Hispanic).

107. As a result of Defendant's unlawful discrimination, Plaintiff has suffered damages as set forth herein.

   **WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT III – COLOR DISCRIMINATION
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

108. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

109. Plaintiff is a member of protected classes in that he is Brown.

110. Plaintiff was qualified to perform the job for which he was hired.

111. Plaintiff suffered adverse job actions, including, but not limited to termination.

112. Similarly situated people outside of Plaintiff's protected class were treated more favorably than Plaintiff.

113. Circumstances exist related to the above cited adverse employment actions that give rise to an inference of discrimination.

114. Defendant discriminated against Plaintiff on the basis of his protected class.

115. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

116. The reasons cited by Defendant for the above cited adverse employment actions that Plaintiff suffered are pretext for discrimination.

117. Defendant's conduct was willful or performed with reckless disregard to his federal statutory rights.

   **WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT IV – DISCRIMINATION BASED ON COLOR
### PENNSYLVANIA HUMAN RELATIONS ACT

118. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

119. The foregoing conduct by Defendant constitutes unlawful discrimination against Plaintiff on the basis of his protected class (Brown).

120. As a result of Defendant's unlawful discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

### COUNT V – NATIONAL ORIGIN DISCRIMINATION
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

121. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

122. Plaintiff is a member of protected classes in that his national origin is Egypt.

123. Plaintiff was qualified to perform the job for which he was hired.

124. Plaintiff suffered adverse job actions, including, but not limited to termination.

125. Similarly situated people outside of Plaintiff's protected class were treated more favorably than Plaintiff.

126. Circumstances exist related to the above cited adverse employment actions that give rise to an inference of discrimination.

127. Defendant discriminated against Plaintiff on the basis of his protected class.

128. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

129. The reasons cited by Defendant for the above cited adverse employment actions that Plaintiff suffered are pretext for discrimination.

130. Defendant's conduct was willful or performed with reckless disregard to his federal statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT VI – DISCRIMINATION BASED ON NATIONAL ORIGIN
## PENNSYLVANIA HUMAN RELATIONS ACT

131. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

132. The foregoing conduct by Defendant constitutes unlawful discrimination against Plaintiff on the basis of national origin (Egypt).

133. As a result of Defendant's unlawful discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT VII – DISABILITY DISCRIMINATION
## AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

134. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

135. Plaintiff is a "qualified individual with a disability" as that term is defined under the ADA because Plaintiff has, or had at all times relevant hereto, disabilities that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

136. Plaintiff was qualified to perform the job.

137. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

138. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

139. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

140. Plaintiff's disabilities motivated Defendant's decision to take adverse actions against Plaintiff.

141. The purported reason for Defendant's decision is pretextual.

142. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

143. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

144. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

145. Defendant's conduct was willful or with reckless disregard to Plaintiff's federally protected statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT VIII – DISABILITY DISCRIMINATION
## PENNSYLVANIA HUMAN RELATIONS ACT

146. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

147. Plaintiff is a "qualified individual with a disability" as that term is defined under the PHRA because Plaintiff has, or had at all times relevant hereto, disabilities that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

148. Plaintiff was qualified to perform the job.

149. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

150. Circumstances indicated that Plaintiff's disability was the reason for the adverse employment action.

151. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

152. Plaintiff's disabilities motivated Defendant's decision to terminate Plaintiff.

153. The purported reason for Defendant's decision is pretextual.

154. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

155. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

156. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

### COUNT IX – RETALIATION
### THE FAMILY AND MEDICAL LEAVE ACT OF 1993, AS AMENDED

157. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

158. Pursuant to 29 U.S.C. § 2611(2)(A) and 29 U.S.C. § 2612(a)(1)(C), Plaintiff was eligible for leave under the FMLA.

159. At all times material, Defendant knew, or should have known, of Plaintiff's need for FMLA Leave to care for his own serious medical conditions.

160. Plaintiff gave Defendant sufficient information to allow it to understand that he needed FMLA leave for FMLA-qualifying reasons.

161. The retaliation occurred in the form of the continued implementation of a policy that

discourages and interferes with Plaintiff's right to invoke his federally protected rights under the FMLA.

162. As a result of Plaintiff's attempt to invoke his FMLA rights, by requesting and utilizing his FMLA rights, Defendant has retaliated against Plaintiff by terminating his employment.

163. Defendant's motivation for retaliating against Plaintiff was connected causally to Plaintiff's FMLA leave.

164. Defendant has acted in bad faith by retaliating against Plaintiff in violation of the FMLA.

165. As a direct and proximate result of Defendant's discharge of Plaintiff, Plaintiff is and was deprived of economic and non-economic benefits resulting from Defendant's willful and/or non-willful actions including but not limited to: loss of back pay, loss of increase in salary, loss of benefits preceding Plaintiff's filing of the lawsuit, cost of providing care, and double liquidated damages under the FMLA for violations not made in good faith.

166. Plaintiff demands judgment against Defendant for all available equitable relief including, but not limited to: reinstatement to job position, full restoration of all leave and health benefits, to which Plaintiff was entitled, and any additional unpaid leave up to the maximum permitted by the FMLA including but not limited to doubling the damages proven inclusive of all wages, salary, employment benefits or other compensation denied or lost.

167. Plaintiff further demands favorable judgment against Defendant for all interest on the monetary benefits calculated at the prevailing rate, an additional amount equal to those sums, as liquidated damages under §107(a), fees and costs including the allowance of reasonable attorneys' fees, expert witness fees and other costs of the action against Defendant and such other orders and further relief as may be necessary and appropriate to

effectuate the objectives of the FMLA.

**WHEREFORE**, Plaintiff demands compensatory and liquidated damages in addition to counsel fees and costs.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Peter Isaac, requests that the Court grant him the following relief against Defendant:

(a) Compensatory damages;

(b) Punitive damages;

(c) Liquidated damages;

(d) Emotional pain and suffering;

(e) Reasonable attorneys' fees;

(f) Recoverable costs;

(g) Pre and post judgment interest;

(h) An allowance to compensate for negative tax consequences;

(i) A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of Title VII, the ADA, the PHRA and the FMLA.

(j) Order Defendant to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

(k) Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(l) Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

                                                                                    **RESPECTFULLY SUBMITTED,**

                                                                                    **KOLLER LAW, LLC**

Date: October 15, 2025                    **By:**  */s/David M. Koller*
                                                                David M. Koller, Esquire
                                                                Jordan D. Santo, Esquire
                                                                2043 Locust Street, Suite 1B
                                                                Philadelphia, PA 19103
                                                                215-545-8917
                                                                davidk@kollerlawfirm.com
                                                                jordans@kollerlawfirm.com

                                                              *Counsel for Plaintiff*